Bernard SAMOFF, Regional Director of the Fourth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD

v.

BUILDING AND CONSTRUCTION TRADES COUNCIL OF READING AND BERKS COUNTY.

Civ. A. No. 38206.

United States District Court E. D. Pennsylvania.

July 22, 1965.

Leo F. Hannon, Philadelphia, Pa., for plaintiff.

Leon Ehrlich, Reading, Pa., for defendant.

HIGGINBOTHAM, District Judge.

The National Labor Relations Board's Regional Director, the Honorable Bernard Samoff, seeks a temporary injunction to restrain defendant, from certain alleged violations of the National Labor Relations Act, as amended. 61 Stat. 149; 73 Stat. 544; 29 U.S.C. § 151 et seq. Jurisdiction of this Court is pursuant to Section 10(*l*) of the National Labor Relations Act which provides:

(*l*) Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) (A), (B), or (C) of section 158(b) of this title, or section 158(e) of this title or section 158(b) (7) of this title, the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and thet a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive

relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law: \* \* \*.

 The only factor which lifts this case from routine National Labor Relations Board injunction petitions is that the petitioner's *first* request for injunctive relief was *after* the alleged unfair labor practices had terminated. While relevant, this latter factor is not sufficient to deny relief which is otherwise warranted. Thus, I will issue the injunction pursuant to the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Petitioner, Bernard Samoff, is Regional Director of the Fourth Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. On or about May 10, 1965, General Plumbing and Heating Company, Inc. (herein called General), pursuant to provisions of the Act, filed charges with the Board alleging that the Building and Construction Trades Council of Reading and Berks County (herein called Council), a labor organization, has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b)(4)(i)(ii), subparagraph (B), of the Act.

3. The aforesaid charge was referred to petitioner as Regional Director of the Fourth Region of the Board.

4. Upon the basis of the following, petitioner has reasonable cause to believe that said charge is true and that a complaint of the Board based on said charge should issue against respondent pursuant to Section 10(b) of the Act. More particularly, petitioner has reasonable cause to believe and believes, that respondent is a labor organization within the meaning of Section 2(5), 8(b) and 10(*l*) of the Act, and that said respondent has engaged in, and is engaging in, acts and conduct in violation of Section 8(b)(4)(i)(ii), subparagraph (B) of the Act, affecting commerce within the meaning of Section 2(6) and (7) of the Act, as follows:

(a) Respondent, an unincorporated association, is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

(b) Respondent maintains its principal office at Reading, Pennsylvania, and at all times material herein respondent has been engaged within this judicial district in transacting business and in promoting and protecting the interests of its employee members.

(c) General, a Pennsylvania corporation, whose principal place of business is located at Pottsville, Pennsylvania, is engaged in the business of residential, industrial and commercial plumbing, heating and air conditioning work. In the operation of its business, General annually receives goods and materials valued at in excess of $70,000 from outside the Commonwealth of Pennsylvania.

(d) The General State Authority (herein called GSA) is presently engaged in the construction of new facilities at the Kutztown State College, Kutztown, Berks County, Pennsylvania (herein called the Kutztown job). Construction at the Kutztown job is being carried out under five (5) separate contracts between GSA and the following firms: Potteiger Co., Inc. (herein called Potteiger), H. B. Alexander & Son, Inc. (herein called Alexander), Coopersmith Bros., Inc. (herein called Coopersmith), Carl Twist Electrical Supply Co. (herein called Twist) and General. These facilities are being constructed at a total cost of $2,899,834.00, of which goods and materials to be used in the construction, valued at in excess of $100,000, are shipped to the construction site from points outside the Commonwealth of Pennsylvania.

(e) In connection with the carrying out of its contract with GSA, General has subcontracted certain work on the Kutztown job to Leon S. Kulp, Inc. (here-

in called Kulp). Kulp was operating on the job in issue as a non-union subcontractor.

(f) W. J. Focht, a business agent for Local 42, Plumbers and Steamfitters, which Local belongs to defendant Council, threatened General that if it continued to sublet the subcontract to the non-union contractor, Leon S. Kulp, Inc., that the Union would "shut the complete job down". Subsequent to the latter threat, there was a meeting of the business agents whose Locals belong to the defendant Building Council where on or about Friday, April 23, 1964, they agreed to and did in fact picket the job on the following Monday, April 26th. Shortly before the pickets were withdrawn on May 24, 1964, the defendant Council had a meeting where it was agreed to withdraw the pickets.

While the agreement to picket as set forth in this subparagraph was in effect, all work terminated in behalf of Potteiger, Alexander, Coopersmith, Twist and General, and none of the employees of the latter companies reported to work.

■ (g) By the acts and conduct set forth in subparagraph (f) above, respondent has engaged in, and has induced and encouraged, individuals employed by Potteiger, Alexander, Coopersmith, Twist and General and other persons to engage in, strikes or refusals in the course of their employment to use, manufacture, process, transport or otherwise handle or work on goods, articles, materials or commodities, or to perform services.

(h) By the acts and conduct set forth in subparagraph (f) above, respondent has threatened, coerced and restrained GSA, Potteiger, Alexander, Coopersmith, Twist and General and other persons engaged in commerce or in any industry affecting commerce.

(i) An object of the acts and conduct of respondent, set forth in subparagraphs (f), (g), and (h) above, was and is to force or require General to cease using, selling, handling, transporting, or otherwise dealing in the products of, and to cease doing business with Leon S. Kulp, Inc., to force or require Potteiger Co., Inc., H. B. Alexander & Son, Inc., Coopersmith Bros., Inc., Carl Twist Electrical Supply Co. and General Plumbing and Heating Company, Inc., or GSA to cease doing business with each other or with other persons.

5. It may fairly be anticipated that, unless enjoined respondent will continue or repeat the acts and conduct set forth in paragraph 4, subparagraphs (f), (g), (h) and (i), above, or similar or like acts and conduct.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter at this proceeding, and under Section 10($l$) of the Act is empowered to grant injunctive relief.

2. There is, and petitioner has reasonable cause to believe that:

(a) Respondent is a labor organization within the meaning of Sections 2(6), 8(b) and 10($l$) of the Act.

(b) Respondent has engaged in unfair labor practices within the meaning of Section 8(b) (4) (i) (ii), subparagraph (B), of the Act, affecting commerce within the meaning of Section 2(6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1(b) thereof.

3. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved now before the Board, respondent, its officers, representatives, agents, servants, employees, attorneys and all members and persons acting in concert or participation with it or them, be enjoined and restrained from the commission, continuation, or repetition of the acts and conduct set forth in Findings of Fact 4(f) above, acts or conduct in furtherance or support thereof, or like or related acts or conduct, the commission of which in the future is likely or may fairly be anticipated from respondent's acts and conduct in the past.

## DISCUSSION

█ It is unnecessary to add to the plethora of lengthy opinions which establish that facts as found here require that an injunction be issued. National Labor Relations Board v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; Schauffler v. Highway Truck Drivers and Helpers Local 107, 230 F.2d 7 (3rd Cir. 1956); Schauffler v. Brewery and Beer Distributor, 162 F.Supp. 1 (E.D.Pa.1958); International Brotherhood of Electrical Workers, etc v. National Labor Relations Board, 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299. The only unusual wrinkle which merits discussion is the fact that the Regional Director filed his complaint after the alleged unfair labor practice had terminated. But, since I have already found that there was no basis for the original illegal acts, I can find no justification for assuming that the respondents will be more responsible in the future in complying with the obvious mandates of the statute.

Counsel for the respondent has stated with candor:

* * * for the record that the status quo as it exists today will be maintained.

We feel that it would be an affront to the Court to change the position that exists today. They do not intend to restore their picketing against Kulp and that is taken as a commitment upon which the Court may act if there is any violation.

While I am of course appreciative of counsel's sincerity, the public interest cannot be contingent upon the persuasiveness of counsel in convincing his clients to comply with the law which they have previously violated. Since there had been an implication that the matter might be speedily resolved by the National Labor Relations Board, I withheld issuing an injunction until today. I have been advised by phone that the National Labor Relations Board has not as yet completed a hearing at the trial stage, and I feel therefore particularly compelled to now issue the injunction so that the status quo will be maintained.

This Circuit has ruled with explicitness in labor matters "that an injunction is appropriate even where the construction has been completed." Thus, in Shore, for and on Behalf of N. L. R. B. v. Building & Construction Trades Council, 173 F.2d 678, 682, 8 A.L.R.2d 731 (3rd Cir. 1949), Circuit Judge Goodrich for the Court noted:

██ The case is not moot. It is true that the construction of the theater has long since been completed. But there is reasonable ground for belief that there was an unfair labor practice. The defendants say that they are not legally liable for doing what they did and certainly indicate no lack of intention to do the same thing in the future. It is clear as a general proposition of equity that the granting of an injunction is not foreclosed because the act feared has already happened, if there is reasonable grounds for believing that it will be done again. And the defense that there is no longer need for an enforcement order because the complained of practices have, at least temporarily, ceased is one that has been threshed out many times in labor cases where it was the employer and not the union who made the point. The current of authority is pretty uniform in rejecting this reason for refusing relief. Those decisions are in point here.

In accord Schauffler v. Highway Truck Drivers & Helpers, Local 107, 230 F.2d 7, at 13 (3rd Cir. 1956). See also Graham v. Longshoremen's Union, Local 19, U.S.D.C., W.D.Wash., 1960, 47 LRRM 2771; Greene v. Bangor Building Trades Council, D.C.Maine, 165 F.Supp. 902.

The record in the instant case is limited to allegations of unfair labor practices at the Kutztown College construction site and thus I have limited the injunction to the type of violations established by the present record. However, if respondents

initiates similar unfair labor practices at other locations, I will promptly consider any motion filed to broaden the instant injunction to the coverage originally requested by petitioner.